Argued and submitted July 25, 2006, affirmed March 14, 2007

Dennis BUCK,
*Plaintiff-Appellant,*

*v.*

ACANDS, INC., et al.,
*Defendants,*

*and*

SEARIVER MARITIME, INC.,
a Delaware corporation,
individually and as successor-in-interest to
Exxon Shipping Company
and Central Gulf Lines, Inc.,
a Delaware corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
020707558; A126553
(Control)

Larry DELLWO,
*Plaintiff-Appellant,*

*v.*

ACANDS, INC., et al.,
*Defendants,*

*and*

SEARIVER MARITIME, INC.,
a Delaware corporation,
individually and as successor-in-interest to
Exxon Shipping Company,
and Keystone Shipping Company,
a Delaware corporation,
wholly owned by Chas Kurz & Co.,
individually and as successor-in-interest to
Keystone Tankship Corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
020707559; A126554

Donald DILLMAN,
*Plaintiff-Appellant,*

*v.*

ACANDS, INC., et al.,
*Defendants,*

*and*

SEARIVER MARITIME, INC.,
a Delaware corporation,
individually and as successor-in-interest to
Exxon Shipping Company,
*Defendant-Respondent.*

Multnomah County Circuit Court
020606425; A126555

Larry HESS,
*Plaintiff-Appellant,*

*v.*

ACANDS, INC., et al.,
*Defendants,*

*and*

SEARIVER MARITIME, INC.,
a Delaware corporation,
individually and as successor-in-interest to
Exxon Shipping Company,
and Keystone Shipping Company,
a Delaware corporation,
wholly owned by Chas Kurz & Co.,
individually and as successor-in-interest to
Keystone Tankship Corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
020707561; A126556

154 P3d 750

Nancy B. Thorington argued the cause for appellants. On the briefs were Elaine J. Brown, Scott Niebling, Gill Purcell, and Brayton Purcell, LLP.

Thomas W. Sondag argued the cause for respondent SeaRiver Maritime, Inc. With him on the brief was Lane Powell PC.

Todd A. Zilbert argued the cause for respondents Keystone Shipping Company and Central Gulf Lines, Inc. With him on the brief were Craig C. Murphy and Wood Tatum Sanders and Murphy.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

SCHUMAN, P. J.

---

* Landau, J., *vice* Richardson, S. J.

## SCHUMAN, P. J.

Plaintiffs are four ship repair workers who have asbestos-related diseases that they attribute to conditions encountered over several decades on various ships owned by one or another of defendants: SeaRiver Maritime, Inc. (SeaRiver), Keystone Shipping Company (Keystone), Central Gulf Lines, Inc. (Central Gulf), and ACandS, Inc. Each plaintiff brought an action alleging a claim under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 USC sections 901 to 950, as well as claims under state law. Defendants moved for summary judgment, which the trial court granted separately to each defendant. These consolidated appeals ensued, in which plaintiffs assign error only to the trial court's ruling regarding the LHWCA.[1] We hold that no objectively reasonable juror, on the summary judgment record viewed in the light most favorable to plaintiffs, could find that any defendant breached a duty owed to plaintiffs. ORCP 47 C. For that reason, defendants are entitled to judgment as a matter of law, and we affirm.[2]

### I.   FACTS AND PROCEDURAL HISTORY

Over the course of their careers, plaintiffs worked for a number of shipyard contractors employed to perform repairs on ships owned by defendants or by defendants' predecessors-in-interest. Plaintiffs allege that they now suffer asbestos-related diseases. They contend that their conditions result from airborne asbestos fibers on those ships, but they are unable to identify the particular dates when they worked on particular ships or where, within those ships, they worked and might have been exposed to asbestos.

Plaintiffs brought claims against defendants under the LHWCA, as well as under state negligence and product liability law. SeaRiver, Central Gulf, and Keystone each moved separately for summary judgment on all claims

---

[1] ACandS, Inc., is not a party on appeal.

[2] Plaintiffs also assign error to the trial court's denial of their motion to strike certain evidence from the summary judgment record on hearsay and authentication grounds. Because the disputed evidence is immaterial to our analysis on appeal and would not preclude summary judgment in defendants' favor, we need not consider that assignment of error.

brought by each plaintiff. Plaintiffs each separately opposed the motions, but only SeaRiver proffered evidence with its memorandum in support of its motion—apparently pursuant to an agreement, later memorialized by formal stipulation, under which Central Gulf and Keystone agreed that the ruling on SeaRiver's motion would apply to them as well. The summary judgment records of each plaintiff in the respective cases against SeaRiver include declarations from each plaintiff indicating the years that he served as a repair technician for shoreside contractors retained by the shipowners and the names of the ships on which he worked that were owned by SeaRiver's predecessor-in-interest, Exxon. No plaintiff, as noted, specified the particular dates on which he worked on any ship.

The record also contains the results of two Industrial Hygiene Studies, one from 1981 and a second from 1989, indicating the presence of asbestos fibers on two of Exxon's ships, the Exxon Baton Rouge and the Exxon New Orleans. Plaintiffs Buck and Hess worked on both; plaintiff Dillman worked only on the Exxon Baton Rouge. The 1981 study of the Exxon Baton Rouge revealed concentrations of airborne asbestos fibers that ranged from less than 0.005 to 0.059 fibers per milliliter with a mean of 0.02 fibers/ml and explained that "[t]he highest concentration recorded on the Baton Rouge, 0.059 fibers/ml in the pump control room, was less than 3% of the allowable level for an eight-hour workshift exposure" according to United States Coast Guard recommendations. The 1989 study of the Exxon New Orleans revealed the presence of asbestos-containing materials on the ship and the presence of airborne asbestos in the amount of 0.021 fibers per cubic centimeter and 0.005 fibers per cubic centimeter, "well below the 0.20 [fibers per cubic centimeter permissible occupational] exposure limit."

Attorneys for each plaintiff also submitted an ORCP 47 E[3] declaration averring that they had retained a certified

---

[3] ORCP 47 E provides, in part:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit or a declaration of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to

asbestos consultant who would testify that "asbestos-containing materials, including pipe covering, block and refractory products, were used in the construction of" certain ships owned by SeaRiver's predecessor-in-interest on which plaintiffs averred that they had worked, and "based upon [the expert's] background training and experience," that plaintiffs were "<u>absolutely</u> exposed to airborne asbestos fibers in the boiler rooms, engine rooms and machinery and other spaces of the ships * * *." (Underscore in original.) No plaintiff submitted an ORCP 47 E declaration in support of a memorandum opposing summary judgment against any other defendant for the purpose of establishing that airborne asbestos was present on any other ships.

Plaintiffs also submitted evidence designed to demonstrate that SeaRiver was aware that asbestos was present on its ships, either as material employed in the ships' construction, or, in limited cases, in airborne fibers. The Industrial Hygiene Surveys mentioned above, commissioned by SeaRiver's predecessor-in-interest, were proffered to indicate SeaRiver's knowledge of the presence of airborne asbestos on those ships. To show that SeaRiver agents had knowledge that its ships had asbestos-containing parts, plaintiffs included a 1981 letter from Exxon Company U.S.A. indicating the existence of procedures for "handling asbestos on board [Exxon's] vessels." The record also contains the 1992 deposition testimony of John S. Gelland, who explained that Exxon began an asbestos abatement program in 1972, in which it replaced asbestos-containing parts of its vessels with nonasbestos-containing parts as replacements became necessary, and, when replacements pursuant to the abatement program were made while a ship was docked, asbestos-abatement specialists would perform the work. Finally, the record includes responses of an Exxon agent to interrogatories posed in a separate 1998 case, in which the agent stated

---

controvert the allegations of the moving party and an adequate basis for the court to deny the motion. The affidavit or declaration shall be made in good faith based on admissible facts or opinions obtained from a qualified expert who has actually been retained by the attorney who is available and willing to testify and who has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment."

that SeaRiver's parent company at the time, Exxon Corporation, had been aware since 1937 that "exposure to asbestos * * * if of sufficient duration and intensity, could lead to * * * 'asbestosis.' "

The parties briefed their arguments separately, but only SeaRiver presented oral argument at the summary judgment hearing. As noted, the parties stipulated that the trial court's decision on the summary judgment motion would apply to defendants Central Gulf and Keystone because their cases presented the same legal issues. The trial court granted SeaRiver's motion and, as the parties anticipated, consequently issued Limited Judgments and Money Awards under ORCP 67 B in favor of SeaRiver, Keystone, and Central Gulf against the respective plaintiffs. The court did not issue a letter opinion. The only statement of its rationale on the record is as follows:

> "I'm going to grant the motion for summary judgment with respect to the Longshoremen Harbor Workers Compensation Act. I think that it's clear—the law is at least clear to me, as clear as it can be to me, that the ship owner—the duty of the ship owner in these circumstances does not extend to the circumstances of plaintiff[s'] claim for the reasons argued by [counsel for SeaRiver], so I'm granting that."

As noted, plaintiffs appeal with respect only to the LHWCA claims. They argue that the trial court granted the motions for summary judgment based on the conclusion that defendants owed no duty to plaintiffs under the LHWCA and, in doing so, the court erred. Defendants respond that they presented arguments based on both lack of duty and breach of duty, and that, whether or not any duty was owed, the trial court did not err in granting summary judgment because, on the uncontested material facts, no reasonable juror could conclude that any defendant breached any duty to plaintiffs. As explained below, we hold that plaintiffs failed to raise an issue of material fact regarding one of the necessary elements of their case: that a reasonable employer would not have been aware of the actual or latent hazard posed by airborne asbestos on ships needing repairs of the type that plaintiffs performed. That failure can be described in terms of duty (defendants' duty did not encompass the duty to turn over a ship

with no actual or latent unsafe conditions; it encompassed only the duty to turn over a ship with no actual or latent unsafe conditions of which a reasonable contractor would not be aware). It can also be described in terms of breach (defendants did not breach their duty to turn over a ship with no actual or latent unsafe conditions of which a reasonable contractor would be unaware). In either case, the failure is fatal to plaintiffs' LHWCA claims.

## II. DISCUSSION

### A. *Legal Standards*

■      The parties correctly observe that, in applying the LHWCA, the appropriate substantive analysis is the traditional "duty"-based negligence standard and not the "foreseeability" standard we apply in ordinary negligence cases under Oregon law. *Scindia Steam Navigation Co. v. De Los Santos*, 451 US 156, 165-66 n 13, 101 S Ct 1614, 68 L Ed 2d 1 (1981); *Geris v. Burlington Northern, Inc.*, 277 Or 381, 383, 561 P2d 174 (1977) ("[S]tate courts are bound to follow federal substantive law but are free to follow their own practices as to matters which are strictly procedural."). It is therefore useful to begin by explaining the standards of care set forth under the LHWCA. The central provision of the act is 33 USC section 905(b) (2000):

> "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person * * * may bring an action against such vessel * * * and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. * * * The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. * * *"

"Vessel" is a term that includes vessel owners such as defendants. 33 USC § 902(21) (2000). Persons who can bring an action against the vessel include persons "engaged in maritime employment, including any * * * ship repairman * * *." 33 USC § 902(3) (2000).

■■■ A vessel owner has a variety of duties that, when breached, give rise to a negligence action under 33 USC section 905(b). Since the duties were first described in *Scindia Steam Navigation Co.*, 451 US at 166-67, they consistently have been described as the "turnover duty," dealing with the condition of the ship when the owner turns it over to shore-side workers; the "active control" duty, dealing with the owner's liability if it actively involves itself in activities taking place after turnover or controls equipment used at that time; and the "intervention" duty, dealing with the owner's supervisory role after turnover. *Howlett v. Birkdale Shipping Co.*, 512 US 92, 98, 114 S Ct 2057, 129 L Ed 2d 78 (1994). The present case involves only the "turnover duty." The United States Supreme Court has described that duty as having dual aspects: the turnover *duty of care*, and its corollary, the turnover *duty to warn*.

> "This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman."

*Scindia Steam Navigation Co.*, 451 US at 166-67 (internal citation omitted); *accord Howlett*, 512 US at 98. Although *Scindia Steam Navigation Co.* and *Howlett* deal with stevedore companies and not repair companies, the standards are the same; 33 USC section 905(b) in terms applies equally to

providers of "stevedoring services" and "repairing * * * services."

■ Thus, to meet its *turnover duty of care*, the vessel owner must turn the ship over to the shoreside repair contractor in a condition such that repair workers can accomplish their services free from those dangers that would not be reasonably apparent to an experienced and expert contractor. In the discharge of its *turnover duty to warn*, the vessel owner must warn the shoreside contractor of those hazards of which a reasonably competent repair contractor neither knows nor should know. *Howlett*, 512 US at 99. Significantly, in order to prove that a defendant breached either the general turnover duty or the turnover duty to warn, the plaintiff bears the burden of demonstrating that the actually or latently unsafe conditions neither were, nor reasonably should have been, known or foreseen by the *shoreside contractor*, that is, the plaintiff's employer. That element of the plaintiff's case follows from the Court's insistence that the vessel owner's duty encompasses elimination or warning only insofar as necessary to render the work safe for "expert and experienced" stevedores (in the case of actual harmful conditions) and "reasonably competent" employers (in the case of latent hazards). *Scindia Steam Navigation Co.*, 451 US at 167; *Howlett*, 512 US at 98-99. The requirement, enacted in a series of LHWCA reforms, flows from a shift in responsibility for compensating injured employees from the vessel owner to the employer, who is "in a far better position" to avoid accidents that an employee might suffer in the course of accomplishing his services. *Scindia Steam Navigation Co.*, 451 US at 171; *Howlett*, 512 US at 97 (explaining legislative reforms). The Court has explained:

> "As a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards. Section 41 of the Act, 33 USC § 941, requires the stevedore, *the longshoremen's employer*, to provide a 'reasonably safe' place to work and to take such safeguards with respect to equipment and working conditions as the Secretary of Labor may determine to be necessary to avoid injury to longshoremen."

Scindia Steam Navigation Co., 451 US at 170 (internal quotation and footnote omitted; emphasis added).[4]

In the present cases, plaintiffs' theory is that defendants violated (1) the turnover duty of care by turning over their ships to plaintiffs' employers in a state that left repair workers exposed to airborne asbestos and (2) the turnover duty to warn by failing to give notice of a known hazard, the presence of asbestos-containing parts, which, when disturbed in the process of repair, would have emitted asbestos fibers into the air.

B.  *Turnover duties*

1.  *Turnover duty of safe condition*

First with respect to SeaRiver, and then Central Gulf and Keystone, we apply the test articulated in *Howlett*: Did plaintiffs establish a genuine issue of material fact concerning whether defendant failed to

> " 'exercise ordinary care under the circumstances' to turn over the ship and its equipment and appliances 'in such condition that an expert and experienced * * * contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care' to carry on * * * operations 'with reasonable safety to persons and property' "?

512 US at 98. As noted above, the vessel owner's duty applies as of the time when the ship is turned over to the shoreside contractor. *Id.* Plaintiffs argue that the record discloses a

---

[4] 33 USC section 941 provides, in relevant part:

"(a) * * * Every employer shall furnish and maintain employment and places of employment which shall be reasonably safe for his employees in all employments covered by this chapter and shall install, furnish, maintain, and use such devices and safeguards with particular reference to equipment used by and working conditions established by such employers as the Secretary may determine by regulation or order to be reasonably necessary to protect the life, health, and safety of such employees, and to render safe such employment and places of employment, and to prevent injury to his employees."

The Secretary of Labor has published specific and detailed Safety and Health Regulations for Longshoring that govern respiratory protection and are applicable to employers. 29 CFR § 1910.134 (2005).

genuine issue of material fact regarding whether each defendant violated this duty because, at the moment of turnover, certain ships were contaminated with airborne asbestos, which, plaintiffs contend in their brief, is a danger that plaintiffs' employers would not reasonably expect to encounter and that compromised plaintiffs' safety. We disagree. As we explain below, plaintiffs have failed to raise a triable issue concerning whether airborne asbestos is or is not a danger that an expert and experienced ship repair contractor would have reasonably expected to encounter during the relevant periods; summary judgment was therefore properly granted in favor of all defendants with respect to the turnover duty of safe condition.

   a.   SeaRiver

   With respect to SeaRiver, plaintiffs emphasize evidence that, in their view, creates a genuine issue of material fact concerning whether they were exposed to, and harmed by, asbestos fibers on SeaRiver vessels. They argue that the Industrial Hygiene Surveys, which disclosed perceptible airborne asbestos fibers on the Exxon New Orleans and Exxon Baton Rouge, and the ORCP 47 declaration, which averred that an expert would testify that asbestos-containing fibers were used on ships where plaintiffs worked, create a triable issue on whether those ships were turned over in an unsafe condition to plaintiffs' employers.

   With that evidence in mind, plaintiffs rely on an Oregon case, *Purcell v. Asbestos Corp., Ltd.*, 153 Or App 415, 424, 959 P2d 89, *adh'd to on recons*, 155 Or App 1, 963 P2d 729 (1998), in which this court held that evidence of the presence of a single airborne asbestos fiber in a workplace presents a jury question on whether a plaintiff's asbestosis was caused by exposure to asbestos at the workplace, as opposed to exposure at some other venue. In plaintiffs' view, once they "have established the presence of a hazard—respirable airborne asbestos—the only issues are * * * breach and causation."

   Plaintiffs' sole emphasis on demonstrating the presence of airborne asbestos on particular ships is misguided. Even if plaintiffs' evidence would support a jury question on causation, they cannot withstand summary judgment unless

they also show that airborne asbestos is not a harm that their employers should reasonably have expected to encounter arising from the repair work. As *Howlett* explains, the turnover duty of safe condition requires the shipowner to guard against harms that "an *expert and experienced * * * contractor*" would not "reasonably expect to encounter, arising from the hazards of the ship's service or otherwise." 512 US at 98 (emphasis added).

Plaintiffs argue that *Castorina v. Lykes Bros. S.S. Co., Inc.*, 758 F2d 1025 (5th Cir 1985), supports the position that an expert and experienced employer would not, as a matter of law, reasonably know of the dangers of airborne asbestos on the types of vessels that they serviced. *Castorina*, however, does not assist plaintiffs. In that case, the defendant acted as both the vessel owner and the employer, a situation contemplated by the LHWCA. *Id.* at 1033. The plaintiff asserted that the defendant, in its capacity as vessel owner, violated the turnover duty to warn by failing to warn the plaintiff about the presence of airborne asbestos.[5]

The court disagreed. It explained that, in order to demonstrate that the defendant in its capacity as vessel owner violated its duty to warn the plaintiff of the presence of airborne asbestos, the plaintiff was required to show that the vessel owner either knew or should have known of the danger and nonetheless neglected to issue a warning. The court noted that "no evidence was presented at trial to support Castorina's allegation that Lykes knew or should have known * * * of the danger that exposure to asbestos presented to longshoremen," and, because of that, the vessel owner could not be liable. *Id.* at 1034. Significantly, however, the court was not called upon to determine whether the defendant, as an employer, should have possessed such knowledge; indeed, the court clearly limited the inquiry to the defendant's knowledge in its role as *vessel owner*. *Id.* at 1033 ("This scheme of compensation requires us to separate the negligence of the shipowner and that of the stevedore,

---

[5] *Castorina* was decided before the turnover duty was characterized in *Howlett* as comprising both the turnover duty of care and turnover duty to warn. The relevant discussion pertains to the defendant's turnover duty to warn, although those terms were not yet in use.

even when the shipowner performs its own stevedoring activities."). Moreover, the court rejected the contention that any knowledge possessed by the employer agents of the defendant could be imputed to the defendant as vessel owner. *Id.* ("[T]he stevedore's knowledge of dangerous conditions that may have arisen during the cargo operations should not be imputed to the shipowner, nor should the shipowner be deemed to know that the stevedore's actions in dealing with such dangers are obviously improvident."). Thus, *Castorina* provides no authority for the proposition that *no shoreside employer* can be expected, as a matter of law, to foresee the presence of airborne asbestos on any of the ships that it services.

Plaintiffs have not pointed to any evidence in the record nor to any legal authority that would support the conclusion that asbestos is *not* a type of harm that an expert and experienced ship repair contractor should reasonably expect to encounter. Because, at trial, they would have had the burden of establishing that fact, they had the burden on summary judgment of producing evidence relevant to it. ORCP 47 C. Once SeaRiver moved for summary judgment on a record devoid of evidence creating a genuine issue of material fact with respect to whether an expert contractor would not have reasonably expected to encounter airborne asbestos, the burden of producing evidence on the issue therefore fell to plaintiffs. ORCP 47 C. Plaintiffs did not present *any* evidence that would meet that burden. In the absence of a triable issue on this factual component that is a predicate to establishing SeaRiver's turnover duty of safe condition, we cannot hold that the trial court erred in granting summary judgment.[6]

b.   Central Gulf and Keystone

Plaintiffs' arguments against Central Gulf and Keystone suffer from the same defect: Plaintiffs have not demonstrated a triable issue concerning whether an expert

---

[6] Indeed, plaintiffs' own evidence indicates that the use of asbestos in ship installations was apparent in the industry, that disturbance of such installations could cause the release of airborne fibers, and that exposure to asbestos is harmful. That evidence supports the legal conclusion that airborne asbestos is a type of danger that "an expert and experienced * * * contractor" would "reasonably expect to encounter, arising from the hazards of the ship's service or otherwise."

and experienced contractor would *not* have foreseen the harm presented by possible airborne asbestos on the ships. Thus, they have not triggered the turnover duty of safe condition.

In addition, plaintiffs also seem to argue (without factual substantiation) that ships owned by Central Gulf and Keystone contained asbestos and, because of that, the record contains an issue of fact as to whether plaintiffs were harmed by the shipowner's breach of duty. Plaintiffs have not indicated, nor did a review of the record reveal, any evidence of airborne asbestos on any ship owned by either Central Gulf or Keystone. Thus, summary judgment was appropriately granted in favor of Central Gulf and Keystone with respect to turnover duty of safe condition.

### 2. *Turnover duty to warn of latent hazards (asbestos-containing materials and airborne asbestos)*

Plaintiffs also argue that asbestos-containing materials were present on the ships and created a latent hazard because the materials, if disturbed, would have resulted in the release of airborne asbestos fibers. Again, we phrase the question based on the formulation articulated in *Howlett*: Did plaintiffs establish a genuine issue of material fact concerning whether defendants failed to warn of

> " 'any hazards on the ship or with respect to its equipment,' so long as the hazards 'are known to the vessel or should be known to it in the exercise of reasonable care,' and 'would likely be encountered * * * in the course of * * * operations, are not known by the [contractor], and would not be obvious to or anticipated by him if reasonably competent in the performance of his work' "?

512 US at 98-99 (citation omitted).

### a. SeaRiver

Plaintiffs have not alleged that any defendant failed to warn any of plaintiffs' employers of a latent hazard on board. Nor does the record contain any facts about whether the presence of asbestos was "not known by the [contractor], and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." *See id.*

Rather, plaintiffs argue (without citation to any legal authority) that, once plaintiffs assert that defendants failed to warn them, as individual employees, of the presence of an alleged latent hazard, defendants bear the burden of proving, as an affirmative defense, that they discharged their duty to warn plaintiffs' *employers* of alleged latent hazards. We disagree.

Having alleged that defendants are liable under 33 USC section 905(b) for breach of the turnover duty to warn, plaintiffs bear the burden of production and persuasion on each element of that tort. OEC 305; OEC 307. With respect to the turnover duty to warn, in order to withstand summary judgment, plaintiffs must show the existence of a genuine issue of material fact that there was a latent hazard on the ship at the time of turnover and that defendant (1) knew or should have known of the defect, (2) the defect would likely be encountered in the course of the servicing work, and (3) that the defect was not *known* or *reasonably anticipated* by the employer. Because the record does not contain any evidence indicating that plaintiffs' employers were *un*aware of the presence of asbestos on the ships that they serviced, or evidence that it would have been unreasonable for the employers to anticipate the presence of asbestos, plaintiffs cannot charge defendants with failing to warn about the asserted hazard.[7]

### b.   Central Gulf and Keystone

As explained above, the record discloses no evidence of any latent hazard for which a warning would have been required. In addition, plaintiffs do not point to evidence that, if a hazard was present, plaintiffs' employers did not know about the purported hazard. Thus, the trial court did not err in granting summary judgment in favor of Central Gulf and Keystone on the LHWCA claim.

### III.   CONCLUSION

The trial court did not err in granting summary judgment in favor of SeaRiver, Central Gulf, and Keystone.

Affirmed.

---

[7] Indeed, the record contains evidence indicating that plaintiffs' employers should have known that asbestos was present on the type of vessels that plaintiffs serviced. *See* 211 Or App at 338 n 6.