Filed 8/18/15  Murat v. Exxon Mobil Corp. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARY MURAT et al., individually and as successors-in-interest,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>EXXON MOBIL CORP. et al.,<br><br>  Defendants and  Respondents. | B247889<br><br>(Los Angeles County<br>Super. Ct. No. BC454696)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed August 11, 2015 be modified as follows:

On page 1, the appearance of counsel is modified to read:  "McKenna Long &

Aldridge, Jayme C. Long, Frederic W. Norris and David K. Schulz; Horwitz & Levy and

David M. Axelrad for Defendants and Respondents."

There is no change in judgment.

_____

EPSTEIN, P. J.                      WILLHITE, J.                      COLLINS, J.

Filed 8/11/15  Murat v. Exxon Mobil Corp. CA2/4 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| MARY MURAT et al., individually and as successors-in-interest,<br><br>   Plaintiffs and Appellants,<br><br>       v.<br><br>EXXON MOBIL CORP. et al.,<br><br>   Defendants and  Respondents. | B247889<br><br>(Los Angeles County<br>Super. Ct. No. BC454696) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emilie Elias, Judge.  Affirmed.

Rose, Klein & Marias, Gregory Stamos, Brian J. Ramsey and Erin M. Beranek; Bailey Perrin Bailey, Lou Thompson Black, Robert Cowan and Justin Jenson for Plaintiffs and Appellants.

McKenna Long & Aldridge, Jayme C. Long, Frederic W. Norris and David K. Schulz for Defendants and Respondents.

_____

Plaintiffs Mary Murat and Susan Murat filed suit against defendants Exxon Mobil Corporation and SeaRiver Maritime, Inc., alleging that their father, decedent Joseph Murat, owner of a vessel repair company, had developed mesothelioma as a result of exposure to asbestos while working onboard defendants' vessels. The trial court granted defendants' motions for summary judgment based on plaintiffs' inability to establish a violation of a duty of care owed to Mr. Murat. Finding no triable issues of material fact, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Murat owned and operated Port Welding & Machine Works, Inc., from 1963 to 1983. In January 2011, he was diagnosed with mesothelioma, a cancer caused by asbestos, and died several months later. His daughters filed suit, both individually and as successors in interest, against numerous owners of vessels that Mr. Murat had repaired during his career. The complaint alleged claims against the vessel owners for negligence under both the Longshore & Harbor Workers' Compensation Act, 33 United States Code section 905(b) (the Act, or section 905(b)) and state law. It is undisputed that the state law claim is preempted by the Act.

The Act is intended to shield "a maritime worker's employer . . . from liability beyond payment of statutory benefits. [Citation.] 'Under certain limited circumstances, the . . . worker may seek damages in a statutory negligence action from the owner of the vessel on which he was injured . . . . [Citations.]' [Citations.] [¶] In *Scindia* [*Steam Navigation Co. v. De Los Santos* (1981)] 451 U.S. 156[, 167–169 (*Scindia*),] the United States Supreme Court articulated the limited circumstances in which a vessel owner may be liable under section 905(b). (*Scindia*, at pp. 166–167.)" (*Bartholomew v. SeaRiver Maritime, Inc.* (2011) 193 Cal.App.4th 699, 710–711 (*Bartholomew*).)

2

The complaint alleged that Mr. Murat had developed mesothelioma as a result of exposure to asbestos onboard defendants' vessels between 1963 and December 5, 1980.[1] The only percipient testimony regarding the possible time, place, and manner of Mr. Murat's exposure to asbestos was provided by two former Port Welding employees, Tony Blazevic and John Bednash.

Mr. Bednash testified that he had worked for Port Welding on several occasions between 1964 and 1970. He did not work on defendants' vessels between 1964 and 1965, but subsequently worked on the Esso Galveston and Exxon Philadelphia with Mr. Murat. He could not recall the type of work being done in Mr. Murat's presence. Mr. Murat wore paper masks when it was dirty or dusty. Mr. Bednash could not say whether any insulation material removed by Mr. Murat while working onboard defendants' vessels contained asbestos.

Mr. Blazevic testified that he had worked for Port Welding from 1967 to 1979. During unspecified periods in that time frame, Mr. Murat worked onboard vessels in engine rooms that had boilers, turbines, pumps, piping, valves, and winches. Other workers also were present in the engine room; workers in the machine room were making valves and gaskets. (The machine room was separated from the engine room by chicken wire.) Mr. Blazevic wore dust masks. Mr. Murat worked onboard Esso Gloucester, Esso Benicia,[2] and Esso Newark. Mr. Blazevic had no information regarding Mr. Murat's activities that resulted in exposure to asbestos onboard the Esso Gloucester, Exxon Philadelphia, Exxon San Francisco, or Exxon New Orleans. Mr. Blazevic worked

---

[1] Plaintiffs initially identified eight vessels owned by Exxon or SeaRiver as possible locations where Mr. Murat had been exposed to asbestos: Esso Benicia, Esso Valdez, Esso Newark, Esso Gloucester, Esso Galveston, Exxon New Orleans, Exxon San Francisco, and Exxon Philadelphia. By the summary judgment hearing, three of the vessels had been removed from that list: Esso Benicia, Esso Valdez, and Esso Galveston.

[2] It was undisputed that Esso Benicia was acquired by SeaRiver after Mr. Blazevic had left Port Welding.

onboard Esso Newark about 50 times in the 1970's. He and Mr. Murat regularly removed insulation from pipes. He had no "information that any conduct of Exxon exposed Mr. Murat to asbestos."

Exxon and SeaRiver moved for summary judgment or, alternatively, summary adjudication. They argued that given the inability of Mr. Blazevic and Mr. Bednash to identify any asbestos products used in Mr. Murat's presence onboard their ships, plaintiffs were incapable of proving that defendants had breached a duty of care owed to Mr. Murat.[3] They argued that Mr. Murat, as owner of Port Welding, met the requirements of an expert ship repair contractor,[4] and, therefore, their duty of care was limited by the Act. (Citing, e.g., *Scindia*, *supra*, 451 U.S. at pp. 167–169; *Howlett v. Birkdale Shipping Co.* (1994) 512 U.S. 92, 98; and *Bartholomew*, *supra*, 193 Cal.App.4th 699.) They argued that asbestos is an obvious hazard on ships that must be anticipated and "navigated" by expert repair contractors such as Port Welding, and there was no evidence of a breach of a duty of care owed to Mr. Murat. Defendants argued there is a "presumption that a ship repair contractor is both an expert and experienced, and as such the shipowner is entitled to rely on the contractor's judgment in deciding whether an obvious hazard can be negotiated in a safe manner." According to the testimony of John Tompkins, who worked for SeaRiver from 1965 to 2000, independent repair contractors such as Port Welding were expected to "anticipate hazards associated with products or

---

[3] The motions differed in that Exxon raised an additional defense—the "wrong entity" defense—that Exxon was not a proper defendant because SeaRiver owned the subject vessels. The trial court did not rule on this defense, and we need not decide the issue given our determination that summary judgment was properly granted on other grounds.

[4] The evidence showed that Mr. Murat was in charge of Port Welding; Port Welding was the general contractor on each job; Port Welding supplied its own tools, but used the ship's gaskets, thermal insulation, and packing; Port Welding was instructed as to the location of the job, but was not told how to perform the work; the vessel owners reserved the right to approve the completed work, and the vessel owners never intervened in the work.

4

materials commonly present aboard vessels, including asbestos." The evidence showed that asbestos-free insulation was available for use before 1972 and was used on SeaRiver's vessels, and that insulation containing asbestos has not been used since 1972.

At the summary judgment hearing, plaintiffs argued that *Bartholomew* involved a more recent period of exposure, from 1977 to 1980. Plaintiffs sought to distinguish *Bartholomew* on the ground that, by 1977, it had become reasonable to assume that expert ship repair contractors were aware of the dangers of asbestos on ships. But there was no evidence this was true in the 1960's when Mr. Murat was working on defendants' ships. Plaintiffs argued that defendants had violated a duty to warn Mr. Murat about the hidden dangers of asbestos because, at the time, such information "wasn't available to working class people like Mr. Murat." Mr. Murat understood only the "normal hazards . . . [of] welding on a ship. He did not understand and no reasonable experienced and expert welder at the time . . . would have understood the dangers of asbestos, certainly not to the extent that the defendant[s] did."

Defendants argued there was no evidence of Mr. Murat's possible asbestos exposure before Mr. Blazevic "started working with him in the late 1960's." Defendants pointed out that according to *Bartholomew*, it is reasonable to assume that ship repair contractors were aware from the 1930's that asbestos was used on ships and was dangerous.

In granting the motion for summary judgment, the trial court stated it believed "*Bartholomew* is the controlling law, so I'm going to follow *Bartholomew* and grant." The written order states the motion was granted "for the reasons set forth in the oral record."

The trial court entered judgment for defendants based on the summary judgment ruling. This timely appeal followed.

DISCUSSION

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  A defendant may make this showing by demonstrating the plaintiff is incapable of establishing one or more elements of the causes of action, or that the defendant has a complete defense to each cause of action.  (§ 437c, subd. (p)(2); *Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

In reviewing the summary judgment ruling, we evaluate the evidence independently.  Like the trial court, we identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether there is a triable issue of material fact.  (*Hodjat v. State Farm Mutual Auto Ins. Co.* (2012) 211 Cal.App.4th 1, 7.)  The opposing party's evidence is to be liberally construed, and all doubts concerning the evidence are resolved in its favor.  (*Ibid.*)  "[W]e are not bound by the trial court's stated reasons in support of its ruling; we review the ruling, not its rationale.  [Citation.]"  (*Limited Stores, Inc. v. Franchise Tax Bd.* (2007) 152 Cal.App.4th 1491, 1495–1496.)

## I

In order to establish liability of a vessel owner under the Act, an injured shipyard worker must prove the vessel owner violated a duty of care.  (*Lormand v. Superior Oil Co.* (5th Cir. 1987) 845 F.2d 536, 541.)  A vessel owner owes three duties of care to a ship repair contractor, commonly referred to as the "'"turnover duty," dealing with the condition of the ship when the owner turns it over to shoreside workers; the "active control" duty, dealing with the owner's liability if it actively involves itself in activities taking place after turnover or controls equipment used at that time; and the "intervention" duty, dealing with the owner's supervisory role after turnover.  [Citation.]'  (*Buck v. ACandS, Inc.* (2007) 211 Or.App. 324, 154 P.3d 750, 755 (*Buck*), citing *Howlett* [*v.*

*Birkdale Shipping Co., S.A.* (1994)] 512 U.S. [92,] 98.)" (*Bartholomew*, *supra*, 193 Cal.App.4th at pp. 710–711.)

*Turnover Duty.* Generally, the turnover duty requires the ship owner to warn the independent contractor of hidden dangers. (*Scindia*, *supra*, 451 U.S. at p. 167.) For example, a vessel owner generally may rely on the stevedore's professional judgment in using a ship's winch that obviously was malfunctioning.[5] (*Id*. at p. 175.) An expert repair contractor is expected to be competent to handle "'conditions that would otherwise be considered unreasonably dangerous to less skilled persons.' [Citations.]" (*Bartholomew*, *supra*, 193 Cal.App.4th at pp. 712–713.)

*Intervention Duty.* Once the ship is turned over to the independent contractor, intervention by the ship owner may be required if the contractor's judgment is "so obviously improvident" that the ship owner, if aware of the danger and the risk posed to the independent contractor's employees, has a duty to intervene. (*Scindia*, *supra*, 451 U.S. at pp. 175–176.)

*Duty of Active Control.* Generally, the ship owner is not required to discover dangerous conditions that develop during the course of the contractor's repair operations. (*Scindia*, *supra*, 451 U.S. at p. 170.) However, the ship owner may owe a duty of care to a worker who is injured in a location that is controlled by the vessel. The duty of care remains with the ship if it substantially controlled or was in charge of "(i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, or (iii) the

---

[5] In *Scindia*, a longshore worker was injured by sacks of flour that fell from a pallet as it was being lowered into the hold of the defendant's ship. (*Scindia*, *supra*, 451 U.S. at pp. 159–160.) The sacks could have fallen because of human error, or because of a malfunction in the braking mechanism of the winch (part of the ship's gear used to lower the pallet into the hold). (*Id.* at p. 160.) There was evidence that the winch had been malfunctioning for several days before the accident. (*Id.* at p. 175.) The Court held that there were triable issues of material fact: whether the winch was defective; whether the defect existed before the ship was turned over to the stevedore; whether the ship owner was aware of the defect; and whether someone else had been negligent. (*Id.* at pp. 178–179.)

specific activities the stevedore undertook.  [Citations.]"  (*Davis v. Portline Transportes Maritime Internacional* (3d Cir. 1994) 16 F.3d 532, 540 (*Davis*).)

In *Davis*, a longshore worker was injured when he slipped and fell on a slippery spot of grease and ice on a vessel walkway while the vessel was being unloaded.  (16 F.3d at p. 535.)  In the worker's action against the vessel owner, summary judgment for the owner was reversed on appeal.  The critical factor was that the accident did not result from professional stevedoring operations, but from the vessel's failure to properly maintain the walkway:  "Should the stevedore fail to live up to its responsibility to protect its workers during stevedoring operations, the Act's compensation scheme forces it to pay the price.  [¶]  When, however, the hazard occurs due to the vessel's active operations, as is plausibly the case here, it no longer is proper for the vessel to defer to the stevedore's expertise in handling cargo."  (*Id.* at p. 548.)

## II

Plaintiffs contend that summary judgment was erroneously granted under *Bartholomew* based solely on the turnover duty.  (*Bartholomew*, *supra*, 193 Cal.App.4th at p. 711 ["present case involves only the 'turnover' duty"].)  Plaintiffs seek a reversal and new hearing on the duties of active control and intervention.  We conclude that because plaintiffs have not demonstrated the existence of a triable issue of material fact, reversal is not warranted.

### A.     *Bartholomew*

The plaintiff (Bartholomew) in *Bartholomew* was a machinist with West Winds, a ship repair company in San Francisco.  (193 Cal.App.4th at pp. 702–703.)  After Bartholomew was diagnosed with asbestosis in 2006, he filed a lawsuit under the Act against the owner (SeaRiver) of various ships that he had repaired between 1977 and 1980 (including the Exxon Baton Rouge and Exxon Galveston).  Bartholomew testified that he had removed pipecovering insulation (which he described as off-white, chalky, cracked, torn, and deteriorated), and had been exposed to large amounts of visible dust during the process.  (*Id.* at p. 706.)  An asbestos consultant (Ay) and an industrial

8

hygienist (Cohen) testified that Bartholomew's descriptions were adequate to show that he had been exposed to asbestos. (*Id.* at p. 707.)

SeaRiver moved for summary judgment on the ground that it had not breached a duty of care to Bartholomew. SeaRiver prevailed in the trial court, and the summary judgment was affirmed on appeal. The appellate court framed the issue as "whether asbestos-containing insulation and airborne asbestos is (or is not) a danger that an 'expert and experienced' ship repair contractor would have reasonably been expected to encounter during the relevant period." (*Bartholomew*, *supra*, 193 Cal.App.4th at p. 712.)

The appellate court found that the burden had shifted to Bartholomew to show "that asbestos is not the type of hazard that an expert and experienced ship repair contractor should reasonably expect to encounter. [Citation.]" (*Bartholomew*, *supra*, 193 Cal.App.4th at p. 716.) Bartholomew failed to meet that burden: "In the absence of a triable issue on this factual issue that is a prerequisite to establishing SeaRiver's turnover duty of safe condition, the trial court did not err in granting summary judgment." (*Ibid.*)

In order to prevail, Bartholomew was required to show that asbestos "was a latent hazard on the ships at the time of turnover and that (1) SeaRiver knew or should have known of the defect, (2) the defect would likely be encountered in the course of the servicing work, and (3) the defect *was not known or reasonably anticipated* by West Winds. [Citations.]" (*Bartholomew*, *supra*, 193 Cal.App.4th at p. 716.) Bartholomew also failed to show latent hazard: "Again, Bartholomew's own evidence, indicating that the use of asbestos on ships and its health risks was known as early as the 1930's, establishes that it was *not unreasonable* for West Winds to *anticipate* the presence of asbestos on the ships that it serviced. Accordingly, the record discloses no evidence of any latent hazard for which a warning would have been required. The trial court properly granted summary judgment in favor of SeaRiver." (*Ibid.*)

## B.    Analysis

Defendants argue summary judgment was proper for several reasons.  First, the evidence in this case, like the evidence in *Bartholomew*, failed to show that the presence of asbestos aboard ships was a latent defect during the period at issue.  Asbestos was known to be a dangerous substance used on ships since 1960, and the 1937 Bonsib report, which was provided in opposition to the motion below, shows that asbestos was recognized to be a dangerous substance in the 1930's.

Second, plaintiffs' evidence did not negate the reasonable inference that Mr. Murat, as the owner of a vessel repair company, was knowledgeable of all state and federal regulations regarding worker safety.  The 1971 OSHA regulation required him to protect his employees from the potential hazards of asbestos.  (*Bartholomew*, *supra*, 193 Cal.App.4th at p. 714.)

Third, although Mr. Blazevic was able to identify a vessel (Esso Gloucester) on which Mr. Murat had worked before the 1971 OSHA regulation was issued, he could not recall the work that Mr. Murat performed on that ship.  No sworn testimony was offered regarding Mr. Murat's activities that were likely to have exposed him to asbestos on defendants' vessels.  Accordingly, there was no reasonable likelihood that plaintiffs have (or are likely to obtain) any additional evidence concerning Mr. Murat's exposure to asbestos on defendants' vessels before 1971.  "If there has been no exposure, there is no causation."  (*McGonnell v. Kaiser Gypsum Co., Inc.* (2002) 98 Cal.App.4th 1098, 1103.)

We conclude that summary judgment was properly granted.  Based on our independent review of the record, we have found no triable issues of material fact.  Plaintiffs' contention that the trial court erred in failing to consider the duty of active control is not persuasive.  That duty is inapplicable where, as here, there is no evidence that the vessel owner retained active control of the area where the injury occurred.  (*Davis*, *supra*, 16 F.3d at pp. 540–541.)  The fact that the vessel owner retained control over the engine room does not create a triable issue of material fact under these

10

circumstances, because there is no evidence as to the manner in which Mr. Murat was exposed to asbestos. The evidence, at best, showed only a mere possibility of exposure.

Liberally construed, plaintiffs' evidence showed only that Mr. Murat had removed insulation from pipes, and the insulation *possibly* contained asbestos. Even if that were true, there is no evidence that his exposure was significant enough "'to show a reasonable medical probability that this exposure was a factor in causing [Mr. Murat's] injuries.' [Citation.]" (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1093.)

*Exxon Mobil Corp. v. Minton* (2013) 285 Va. 115 (*Minton*) does not compel a different result. The plaintiff (Mr. Minton), a shipyard worker, developed mesothelioma after working in a shipyard from 1956 to 1993. (*Id.* at p. 120.) The evidence showed that during Mr. Minton's career, he spent over 1,000 days walking through "the asbestos containing area" of 17 Exxon vessels, and that dust from asbestos insulation was prevalent in the areas that he frequented. (*Id.* at p. 129.) This evidence was supported by expert testimony that established a causal link "between the prevalence of asbestos on Exxon's vessels and the injury to Minton." (*Ibid.*) There is no comparable evidence in this case.

We also conclude that the duty to intervene does not exist in this case. Because there is no testimony regarding Mr. Murat's state of mind and the date, place, and manner of his possible exposure to asbestos, it is impossible to determine whether he was unaware of the risk of harm. There is no evidence that the duty to intervene was triggered by Mr. Murat's obvious disregard of a dangerous condition known to defendants. (*Scindia*, *supra*, 451 U.S. at pp. 175–176.) Without such evidence, plaintiffs cannot prove the ship owners owed a duty to intervene, or that their failure to intervene was a substantial factor in causing Mr. Murat's injury.

11

**DISPOSITION**

The judgment is affirmed.  Defendants are entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


COLLINS, J.