54 Cal.Rptr.3d 568 (2007)
147 Cal.App.4th 461
Karen J. TOWNS, Plaintiff and Appellant,
v.
Herbert J. DAVIDSON et al., Defendants and Respondents.
No. C050829.
Court of Appeal of California, Third District.
February 2, 2007.
*570 Kelegian White & Reed and Michael R. White, Los Angeles; Stewart Humpherys Burchett & Molin, Richard J. Molin, Chico, and Edward V. Rizzuto, for Plaintiff and Appellant.
Lauria Tokunaga Gates & Linn and Mark D. Tokunaga, Sacramento for Defendant and Respondent.
NICHOLSON, J.
The trial court granted the defendants' motion for summary judgment, concluding the doctrine of primary assumption of risk barred plaintiff from recovering damages for injuries she suffered when a ski resort *571 employee collided with her while both were skiing. We affirm.

FACTS
In March 2002, defendant Herbert J. Davidson (Davidson) was employed by defendant Mammoth Mountain Ski Area (Mammoth) as a ski host manager. Part of his job duties included skiing the slopes, checking with other ski hosts on the hill, and talking to the guests. He also was allowed to ski one or two runs during the day, and on occasion could do so with a spouse, relative or friend. At those times, he would still be on duty as a ski host and would be wearing a Mammoth uniform. Mammoth's policy manual for hosts, the Host Manual, required him to "always ski as a Host" when in uniform, and "to look out for the safety of our fellow employees and guests on and off the Hill."
On March 4,2002, plaintiff Karen Towns was skiing down Stump Alley, a ski run at Mammoth. The ski traffic was light, the weather was beautiful, and visibility was "perfect." Plaintiff was skiing down the skier's left side of Stump Alley underneath the chairlift line.
At the same time, Davidson, on duty and in uniform, was skiing with his wife down the center of Stump Alley, making giant slalom-type turns. While making his turns, Davidson was concentrating on holding an edge through the turns and keeping his skis across the fall line with his torso facing down the fall line. He would look down the fall line while crossing it.[1]
About midway down Stump Alley, Davidson skied out to his right, made a turn and, while traversing the slope to the left, collided with plaintiff. He did not see plaintiff until the point of impact. Davidson does not remember looking to his left before making the turn. He never saw anybody on his left side.
Plaintiff suffered serious injuries to her right leg as well as a concussion and low back strain. She sued both Davidson and Mammoth. She alleged Davidson was skiing in a negligent and reckless manner. She also alleged Mammoth negligently failed to train and supervise Davidson.
Defendants moved for summary judgment. They claimed the doctrine of primary assumption of risk excused them from liability for negligence and there were no facts establishing recklessness. The trial court agreed and granted summary judgment in defendants' favor. Plaintiff appeals from the judgment, claiming primary assumption of risk does not apply because disputed issues of material fact exist on whether Davidson was a coparticipant in the sport when skiing while on duty, and whether Davidson was reckless in his skiing.

DISCUSSION

I

Standard of Review
A trial court will grant summary judgment where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant moving for summary judgment must prove the action has no merit He does this by showing one or more elements of plaintiffs cause of action cannot be established or that he has a complete defense to the cause of action. At this point plaintiff then bears the burden of showing a triable issue of material fact exists as to *572 that cause of action or defense. (Code Civ. Proc., § 437c, subds. (c), (o)(2); Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 843, 849-850, 107 Cal.Rptr.2d 841, 24 P.3d 493.)
On appeal, we exercise our independent judgment, deciding whether undisputed facts negate plaintiffs claims as presented in her complaint or state a complete defense. (Starzynski v. Capital Public Radio, Inc. (2001) 88 Cal.App.4th 33, 37, 105 Cal.Rptr.2d 525.) In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. "(e); Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 334,100 Cal.Rptr.2d 352, 8 P.3d 1089.) We accept as true the facts supported by plaintiffs evidence and the reasonable inferences therefrom (Soda v. Robert F. Kennedy Medical Center (1997) 56 Cal. App.4th 138, 148, 65 Cal.Rptr.2d 112), resolving evidentiary doubts or ambiguities in plaintiffs favor. (Saelzler v. Advanced Group 400 (2001) 25 Cal.4th 763, 768, 107 Cal.Rptr.2d 617, 23 P.3d 1143.)

II

Primary Assumption of Risk
"`As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ.Code, § 1714.)' (Knight v. Jewett (1992) 3 Cal.4th 296,315[, 11 Cal.Rptr.2d 2, 834 P.2d 696] (hereafter Knight).) The doctrine of primary assumption of the risk is an exception to the general rule. The doctrine arises `where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury....' (Knight, supra, 3 Cal.4th at pp. 314-315[, 11 Cal.Rptr.2d 2, 834 P.2d 696].) [¶]... [¶]
"Determining the existence and scope of a defendant's duty of care `is one of law to be decided by the court, not by a jury, and therefore it generally is "amenable to resolution by summary judgment." (Knight, supra, 3 Cal.4th at p. 313[, 11 Cal.Rptr.2d 2, 834 P.2d 696].)' (Kahn v. East Side Union High School Dist. [(2003)] 31 Cal.4th [990,] 1004[, 4 Cal. Rptr.3d 103, 75 P.3d 30].)
"Whether a duty exists `does not turn on the reasonableness or unreasonableness of the plaintiffs conduct, but rather on [1] the nature of the activity or sport in which the defendant is engaged and [2] the relationship of the defendant and the plaintiff to that activity or sport.' (Knight, supra, 3 Cal.4th at p. 309[, 11 Cal.Rptr.2d 2, 834 P.2d 696].)
"If a duty is found not to exist, primary assumption of risk applies, and a defendant is liable only if he intentionally injures the plaintiff or engages in conduct so reckless as to be totally outside the range of the ordinary activity involved in the sport or activity. (Parsons v. Crown Disposal Co. (1997) 15 Gal.4th 456, 480-481[, 63 Cal.Rptr.2d 291, 936 P.2d 70]; Knight, supra, 3 Cal.4th at p. 320[, 11 Cal.Rptr.2d 2, 834 p.2d 696].)" (SaviUe v. Sierra College (2005) 133 Cal.App.4th 857, 865-866, 36 Cal.Rptr.3d 515 (hereafter Saville).)
Regarding the nature of the activity, in general, the doctrine applies to activities or sports where "conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself." (Knight, supra, 3 Cal.4th at p. 315, 11, Cal.Rptr.2d 2, 834 P.2d 696, italics added.)
*573 Plaintiff does not deny the nature of skiing lends the sport to being an activity to which primary assumption of risk applies. "The risks inherent in snow siding have been well catalogued and recognized by the courts. Those risks include injuries from variations in terrain, surface or subsurface snow or ice conditions, moguls, bare spots, rocks, trees, and other forms of natural growth or debris. They also include collisions with other skiers, ski lift towers, and other properly marked or plainly visible objects and equipment." (Lackner v. North (2006) 135 Cal.App.4th 1188, 1202, 37 Cal.Rptr.3d 863, italics added.)
"[T]he integral conditions of the sport or the inherent risks of careless conduct by others render the possibility of injury obvious, and negate the duty of care usually owed by the defendant for those particular risks of harm. (Lilley v. Elk Grove Unified School Dist. (1998) 68 Cal. App.4th 939, 943[, 80 Cal.Rptr.2d 638].) A duty imposed in those situations would significantly change the very purpose or nature of the activity. `The overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature.' (Ferrari v. Grand Canyon Dories (1995) 32 Cal. App.4th 248, 253[, 38 Cal.Rptr.2d 65]; see Knight, supra, 3 Cal.4th at pp. 318-319[, 11 Cal.Rptr.2d 2, 834 P.2d 696].)" (Saville, supra, 133 Cal.App.4th at p. 867, 36 Cal.Rptr.3d 515.)
Recognizing the nature of skiing invites application of primary assumption of risk, plaintiff focuses her argument on defendants' relation to her and to the activity. Specifically, she asserts Davidson should be held to a higher standard of care because he was an employee of Mammoth who at the time of the accident was skiing as part of his employment but doing so in a manner that violated Mammoth's employee policies. Alternatively, she claims primary assumption of risk should not apply because disputed issues of fact suggest Davidson's actions were reckless. We consider each argument.

A. Davidson's status as a Mammoth employee

"Duties regarding the same risk may differ depending on the role played by the particular defendant. In the sporting context, for example, a defendant could be in the role of `co-participant, passive observer, instructor, coach, owner of the venue in which the sport is played, or supplier of the equipment used in the sport.' (Peart v. Ferro (2004) 119 Cal.App.4th 60, 72[, 13 Cal.Rptr.3d 885].)" (Saville, supra, 133 Cal.App.4th at p. 870, 36 Cal.Rptr.3d 515.)
Defendants generally have a duty "to use due care not to increase the risks to a participant over and above those inherent in the sport." (Knight, supra, 3 Cal.4th at p. 316, 11 Cal.Rptr.2d 2, 834 P.2d 696.) The Supreme Court has determined a coparticipant in a sport breaches that duty "only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (Id. at p. 320, 11 Cal.Rptr.2d 2, 834 P.2d 696, fn. omitted.)
Plaintiff tries to avoid this rule by arguing Davidson was not a coparticipant. She argues he was an employee of Mammoth acting within the scope of his job but increasing the risks of injury beyond that inherent in the sport by performing his duties in a dangerous and negligent manner. She claims Davidson was not free to "vigorously participate" in skiing without regard to his employment duty of looking out for the safety of employees and guests.
*574 In essence, plaintiffs argument states simply Davidson was a negligent employee. Both sides acknowledge finding no reported case holding primary assumption of risk does not apply where the coparticipant defendant was acting within the scope of his employment at the time of the injury. Many cases, however, have applied primary assumption of risk to shield employees acting as coaches and their employers from negligence liability. (See, e.g., Kane v. National Ski Patrol System, Inc. (2001) 88 Cal.App.4th 204, 211-212, 105 Cal.Rptr.2d 600; Lilley v. Elk Grove Unified School Dist, supra, 68 Cal. App.4th at pp. 943-944, 80 Cal.Rptr.2d 638.)
Plaintiff has not explained why assumption of risk would not apply to a coparticipant employee when it applies to a person employed as a coach or instructor. A coach assumes additional responsibilities towards the student, teaching how to master the sport and challenging the student to excel beyond his current limits, all the while knowing the: challenge "will not always be met." (Kane v. National Ski Patrol System, Inc., supra, 88 Cal.App.4th at pp. 211-212, 105 Cal.Rptr.2d 600.) Even with these additional burdens, the employed coach is nonetheless shielded from liability under the doctrine of assumption of risk. We see no reason why employees acting as coparticipants in an activity should not also be similarly shielded.
In this instance, the fact of Davidson's employment is irrelevant. Whether or not Davidson was employed by Mammoth, the inherent risks of injury from skiing down a snow covered mountain include accidentally careless conduct by other skiers resulting in collisions. This risk is so inherent and obvious it goes without saying plaintiff assumed that risk no matter who the other skiers may be.
Plaintiff argues Mammoth increased the risk of injury by placing Davidson on the ski slope. "The owner or organizer of an activity is under a duty not to increase the risk of injury inherent in the activity. It must minimize the risks, but need not do so at the expense of altering the nature of the activity. (Knight, supra, 3 Cal.4th at p. 317[, 11 Cal.Rptr.2d 2, 834 P.2d 696].)
"For example, an organizer of a marathon has a duty to organize and conduct a reasonably safe race. That duty includes the obligation to minimize the risks of dehydration and hyponatremia by providing adequate water and electrolyte fluids along the course. Injuries arising from a breach of this duty are reviewed under the doctrine of secondary assumption of risk, and are thus determined under the principles of comparative fault. (Saffro v. Elite Racing, Inc. (2002) 98 Cal.App.4th 173, 178-179[, 119 Cal.Rptr.2d 497]; see also Morgan v. Fuji Country USA, Inc. (1995) 34 Cal.App.4th 127, 134-135[, 40 Cal. Rptr.2d 249] [defendant owner of a golf course had obligation to design course that would minimize the risks that players would be hit by golf balls and provide protection for players from being hit in the area of the course where the greatest danger existed].)" (Saville, supra, 133 Cal. App.4th at p. 872, 36 Cal.Rptr.3d 515.)
Mammoth's act of employing Davidson and requiring him to be on the slope did not increase the risk of injury inherent in skiing. Davidson was just another coparticipant in a dangerous activity who could accidentally cause injury. That he was also an employee subject to an employment policy to ski safely did not increase the risk of injury inherent in an already dangerous sport.
Moreover, to hold Davidson and Mammoth liable here would fundamentally alter the nature of the sport. Davidson would *575 no longer be able to ski aggressively as the sport allows, and Mammoth would no longer hire persons to perform any type of skiing as part of their job, no matter the benefit and safety they can provide to Mammoth's guests. This is the very outcome primary assumption of risk is designed to prevent. Davidson's status as an employee of Mammoth did not bar operation of primary assumption of risk.

B. Reckless behavior

Alternatively, plaintiff claims she submitted sufficient facts to create a triable issue on whether Davidson's skiing was reckless and thus outside the shield of primary assumption of risk. The trial court concluded there was no such triable issue, and we agree.
"`Recklessness' refers to a subjective state of culpability greater than simple negligence, which has been described as a `deliberate disregard' of the `high degree of probability' that an injury will occur. [Citations.] Recklessness, unlike negligence, involves more than `inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a `conscious choice of a course of action ... with knowledge of the serious danger to others involved in it.' (Rest.2d Torts, § 500, com. (g), p. 590.)" (Delaney v. Baker (1999) 20 Cal.4th 23, 31-32, 82 Cal.Rptr.2d 610, 971 P.2d 986, fn. omitted.)
To establish Davidson's conduct was reckless and not shielded by primary assumption of risk, plaintiff must show the conduct was "so reckless as to be totally outside the range of the ordinary activity involved in the sport." (Knight, supra, 3 Cal.4th at p. 320, 11 Cal.Rptr.2d 2, 834 P.2d 696, fn. omitted.) "`[C]onduct is totally outside the range of ordinary activity involved in the sport (and thus any risks resulting from that conduct are not inherent to the sport) if the prohibition of that conduct would neither deter vigorous participation in the sport nor otherwise fundamentally alter the nature of the sport.' [Citations.]" (Distefano v. Forester (2001) 85 Cal.App.4th 1249, 1261, 102 Cal.Rptr.2d 813.)
In addition to relying on Davidson's deposition testimony, plaintiff submitted portions of her own deposition transcript, the deposition transcript of Richard Morin and an expert declaration by Dick Penniman, to show disputed issues of fact on the issue of recklessness.
Plaintiff testified that while skiing that day, she first saw Davidson out of the corner of her right eye about 25 to 30 feet to her right and slightly downhill from her. She thought he was going extremely fast for an intermediate slope. She saw him make a giant slalom turn to the left before the collision.
Morin is a California Highway Patrol officer who happened to be riding up the ski lift above the accident site at the time of the accident. Morin had been a law enforcement officer for approximately three or four years by the time of the accident and was based out of Bridgeport. Morin would ski over 100 days a year while living in the Mammoth area.
On the slope below and ahead of him, Morin saw a female skier making small turns and going slow, and he saw a male skier in a Mammoth host uniform making giant slalom turns going at a fairly fast speed. Morin estimated the male skier was traveling between 25 and 30 miles per hour. He saw the male skier about 25 to 30 yards to the right of the female skier make a sharp left turn, ski across the fall line and begin to go up the slope. Then the male skier collided with the female skier. It appeared to Morin the male skier saw the female skier at the last second *576 and tried to avoid hitting her, but it was too late. Morin stated he did not see the male skier look to his left before he made the sharp left turn.
As is readily apparent, the material facts are not in dispute. Davidson was skiing quickly and aggressively. He likely turned without first looking to see where he was going because he was concentrating on his technique, which included looking down the fall line. These facts do not establish conduct totally outside the range of ordinary activity involved in the sport of skiing. There is no evidence Davidson consciously and deliberately chose to ski in a manner that knowingly introduced risks of injury foreign to those inherent in the sport of skiing.
Moreover, were we to conclude Davidson's conduct was so reckless as to be totally outside the range of ordinary activity involved in the sport of skiing, we would call into question vigorous skiing and fundamentally alter the nature of the sport. For many, the thrill of the sport is to ski as fast and as aggressively as reasonably possible. Assigning liability to Davidson on these facts would eliminate that aspect of the sport.
Plaintiff faults the trial court for excluding the declaration of her expert witness, Dick Penniman. Penniman is a member of the National Ski Patrol, a certified ski instructor, and a siding safety consultant. His consulting work includes trail safety and design, mountain operations management, and employee training. He also performs forensic work related to skiing and ski area management, including reconstruction of ski accidents.
Penniman reviewed the deposition transcripts of plaintiff, Davidson, Morin, and others, the incident reports filed by Morin and plaintiff, and the Host Manual. Based on this review, his personal familiarity with the Stump Alley run, and his personal experience, Penniman opined the collision "was caused by Davidson siding so reckless as to be well outside the range of the ordinary activity involved in the sport of skiing.''
Penniman stated Davidson failed to look left before he turned left, and, once he turned, proceed to go uphill in front of Towns. In Penniman's opinion, these acts exhibited recklessness well outside the range of ordinary recreational skiing, particularly in light of the fact Davidson was on duty as a Mammoth host at the time of the accident.
The trial court granted defendants' motion to strike Penniman's declaration in its entirety. The trial court did not abuse its discretion in doing so.
Generally, a party opposing a motion for summary judgment may use declarations by an expert to raise a triable issue of fact on an element of the case provided the requirements for admissibility are established as if the expert was testifying at trial. (See Ochoa v. Pacific Gas & Electric Co. (1998) 61 Cal.App.4th 1480, 1487, 72 Cal.Rptr.2d 232; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶¶ 10:124, 10:260.20, pp. 10-48, 10-100.) An expert's opinion is admissible when it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact...." (Evid.Code, § 801, subd. (a).) Although the expert's testimony may embrace an ultimate factual issue (Evid.Code, § 805), it may not contain legal conclusions. (Summers v. AL. Gilbert Co. (1999) 69 Cal.App.4th 1155, 1181, 82 Cal.Rptr.2d 162.)
In the context of assumption of risk, the role of expert testimony is more limited. "It is for the court to decide *577 whether an activity is an active sport, the inherent risks of that sport, and whether the defendant has increased the risks of the activity beyond the risks inherent in the sport." (American Golf Corp. v. Superior Court (2000) 79 Cal. App.4th 30, 37, 93 Cal.Rptr.2d 683.) A court in its discretion could receive expert factual opinion to inform its decision on these issues, particularly on the nature of an unknown or esoteric activity, but in no event may it receive expert evidence on the ultimate legal issues of inherent risk and duty. (Ibid.; Staten v. Superior Court (1996) 45 Cal.App.4th 1628, 1636, 53 Cal.Rptr.2d 657.)[2]
The nature and risks of downhill skiing are commonly understood, the demarcation of any duty owed is judicially defined, and, most significantly, the facts surrounding the particular incident here are not in dispute. Thus, the trial court was deciding the issue of recklessness as a matter of law. There was little an expert's opinion could have added that would have assisted the trier of fact on any of the issues before it.
Plaintiffs expert added nothing beyond declaring the undisputed facts in his opinion constituted recklessness. In short, he "was advocating, not testifying." (Summers v. A.L. Gilbert Co., supra, 69 Cal.App.4th at p. 1185, 82 Cal.Rptr.2d 162, italics omitted.) He reached what in this case was an ultimate conclusion of law, a point on which expert testimony is not allowed. (West v. Sundown Little League of Stockton, Inc. (2002) 96 Cal.App.4th 351, 358-359, 116 Cal.Rptr.2d 849.) "Courts must be cautious where an expert offers legal conclusions as to ultimate facts in the guise of an expert opinion." (Benavidez v. San Jose Police Dept. (1999) 71 Cal. App.4th 853, 865, 84 Cal.Rptr.2d 157.) This is particularly true in the context of assumption of risk where the facts are not in dispute. The trial court was well within its discretion to exclude Penniman's declaration.
The trial court correctly concluded there was no evidence on which a jury could determine Davidson was reckless in his skiing.[3]

DISPOSITION
The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.276(a)(4).)
SCOTLAND, P.J., and SIMS, J., concur.
NOTES
[1] Davidson explained the fall line is the imaginary line a ball would follow rolling from the skier directly to the bottom of the hill.
[2] Moreover, expert testimony that the injury would not have occurred had the defendant done something differently is insufficient to establish the defendant increased the inherent risks of the sport and does not create a triable issue of fact on a motion for summary judgment based on primary assumption of risk. (American Golf Corp. v. Superior Court, supra, 79 Cal.App.4th at p. 39, 93 Cal.Rptr.2d 683.)
[3] Plaintiff asks us pursuant to Evidence Code sections 452 and 459 to take permissive judicial notice of Mammoth's appellant and reply briefs filed with this court in Mammoth Mountain Ski Area v. Graham (2006) 135 Cal. App.4th 1367, 38 Cal.Rptr.3d 422, claiming they show Mammoth is arguing inconsistent positions between that case and this one, potentially triggering the doctrine of judicial estoppel. (See Kelsey v. Waste Management of Alameda County (1999) 76 Cal.App.4th 590, 598, 90 Cal.Rptr.2d 510.) We deny the request. In Graham, we concluded Mammoth as plaintiff submitted sufficient facts of recklessness to justify sending that issue to trial. The defendant in that case who collided with Mammoth's employee was not only skiing, but was also engaged in a snowball fight with another skier as he came down the slope. (Id. at p. 1367, 38 Cal.Rptr.3d 422.) Our published opinion in Graham establishes the irrelevance of Mammoth's briefs in that case here where the undisputed facts d© not support any finding of recklessness.