Filed 4/8/15  Rees v. Crawford CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| MARIJANE REES, | C073460 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0030003) |
| v. | |
| CAITLIN CRAWFORD, | |
| Defendant and Respondent. | |

Appellant Marijane Rees was injured during the performance of her job as a ski instructor at Alpine Meadows Ski Resort.  She brought a negligence action against the skier who collided with her, Caitlin Crawford.  The trial court granted Crawford's motion for summary judgment on the grounds Rees had assumed the risk of being injured from a collision with another skier, and Crawford's conduct was not reckless because it was neither completely outside the range of ordinary activity involved in the sport, nor done with a deliberate disregard of the high degree of probability that an injury would result.

Rees argues there was sufficient evidence to raise a triable issue of fact as to whether Crawford's conduct was reckless.  We disagree and shall affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Rees worked for Alpine Meadows Ski Resort as a supervisor for the adult ski school, and had been a ski instructor for 27 years. At the time of the incident, she was instructing two students on the Sherwood run, which is a run of intermediate difficulty. She and her students were on the far left side of the run, practicing slow, controlled turns, with Rees in the lead, and the two students following her. Rees was wearing an orange jacket.

Crawford had been skiing since the age of six, and was capable of skiing expert runs. On the day of the accident, she was skiing with her boyfriend, and because he was a faster skier, they had planned to meet at the bottom of the run. As Crawford was skiing down the run, she noticed three people who appeared to be standing in a circle to her left, approximately 25 feet left of the center of the run, and approximately 15 to 20 feet from her. At this point, she had completed about three-quarters of the run. When she saw the group of three, the slope was starting to level off, and she could see the chairlift. She started to ski straight in order to have enough momentum to make it to the chairlift. Her boyfriend was further down the mountain on the right side. Crawford was going to ski past the group of three on her left, when she saw Rees in her peripheral vision starting to do "figure eights." She stated that Rees went directly in front of her and she had no time to react. She screamed and they collided.

As Rees was on her sixth consecutive turn, she heard a shout and almost simultaneously felt the impact. She never saw Crawford until Crawford was almost on her. Rees flew up and came down on her left hip, then rolled and landed again on her right shoulder. Her resting point was approximately 20 feet from the point of impact. Rees fractured her femur, requiring insertion of a titanium rod, "smashed" her bicep tendon, and tore her rotator cuff.

The Sherwood run was not crowded the day of the collision. Sherwood run is wide in the area where the collision occurred. The ski conditions were good and visibility was clear.

DISCUSSION

A.
Standard of Review

"The standard of review for summary judgment is well established. The motion 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A moving defendant has met his burden of showing that a cause of action has no merit by establishing that one or more elements of a cause of action cannot be established or that there is a complete defense. [Citation.] [¶] We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party." (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1196 (*Lackner*).)

B.
Crawford Met Burden of Going Forward

Rees first argues that Crawford presented insufficient evidence to go forward with her summary judgment motion. She recognizes the shifting burden of production in a motion for summary judgment. "[G]enerally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

Rees argues that Crawford's separate statement of undisputed material facts did not demonstrate sufficient facts to shift the burden to Rees to show that that there were

3

triable issues of fact. Crawford's separate statement of undisputed material facts showed that the incident occurred as a result of a collision between two skiers, that plaintiff alone had witnessed several such collisions per year (implying skier collisions were an inherent risk of the sport), that Rees did not see Crawford until immediately before the collision (implying she could not estimate Crawford's speed from having viewed her skiing), that the collision did not occur in a rest area or while one skier was standing still, that no evidence indicated Crawford was under the influence of alcohol at the time of the collision or that she intentionally ran into Rees, and that the assumption of risk provisions of the Placer County Code applied.

Where the defendant is the party moving for summary judgment, he (or she) " 'has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.) "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.) Thus, where a defendant establishes no duty existed to use due care toward the plaintiff, the defendant has met the burden of going forward, and the burden shifts to the plaintiff to show a triable issue of fact exists.

Under the doctrine of assumption of risk, a participant in a recreational sports event "owes no duty of care to another participant to avoid careless conduct that frequently occurs during vigorous participation in the sport." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 537.) A defendant who demonstrates that the doctrine of assumption of risk applies has met the burden of showing that the cause of action has no merit because one element of the cause of action, the element of duty,

4

cannot be established. The sport of snow skiing is an activity to which the doctrine of assumption of risk applies, especially when the injury occurs from the risk of colliding with another skier. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 467.)

Sports participants breach a legal duty of care to other participants "only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 320, fn. omitted.) Recklessness is the " ' "deliberate disregard" of the "high degree of probability" that an injury will occur. [Citations.] Recklessness, unlike negligence, involves more than "inadvertence, incompetence, unskillfulness, or a failure to take precautions" but rather rises to the level of a "conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it." [Citation.]' [Citation.]" (*Towns v. Davidson*, *supra*, 147 Cal.App.4th at p. 470.)

Thus, by establishing that the case involved a collision between two skiers, Crawford met her burden of demonstrating that Rees could not establish all of the elements of a prima facie case for negligence, since the doctrine of assumption of risk negated the element of duty. Crawford also presented evidence that her conduct was not reckless by showing that the collision occurred while both parties were actively skiing in an area designated for skiing, that she did not intentionally run into Rees, and that there was no evidence Crawford was under the influence of alcohol. It was then incumbent upon Rees to show that a triable issue of fact existed as to whether the doctrine of assumption of risk was negated by evidence of Crawford's reckless conduct.

C.

No Evidence Crawford's Conduct Was Reckless

Rees acknowledges that the assumption of risk doctrine applies to the sport of snow skiing, but argues there was a triable issue whether Crawford's conduct was reckless. To show that Crawford's conduct was reckless, Rees "must show the conduct was 'so reckless as to be totally outside the range of the ordinary activity involved in the

5

sport.' [Citation.]" (*Towns v. Davidson, supra,* 147 Cal.App.4th at p. 470.)
" ' "[C]onduct is totally outside the range of ordinary activity involved in the sport (and thus any risks resulting from that conduct are not inherent to the sport) if the prohibition of that conduct would neither deter vigorous participation in the sport nor otherwise fundamentally alter the nature of the sport." [Citations.]' [Citation.]" (*Ibid.*)

Rees's allegations of recklessness were that Crawford was skiing at a speed that was in excess of her abilities and was excessive for the conditions. The evidence Rees adduced to support her claim that Crawford had been skiing at an excessive rate of speed was Rees's own judgment that the force of the impact implied Crawford had been going fast, and the declaration of one of Rees's students, who stated he could not see why Crawford hit Rees other than "the fact that she was going too fast."

There was no evidence Crawford was skiing at a speed that was excessive for the conditions. It was undisputed that the conditions were good. It was sunny and the visibility was clear that day. The snow was groomed and not icy. The slope was not crowded, and was wide at the point of impact.

Although Rees opined that it was a "possibility" that Crawford was skiing beyond her ability since she had been unable to stop, Crawford testified that she "felt absolutely in control." She stated she had been going at a speed that was safe for traffic, and that she had been passed by other skiers. She had not been skiing at one of her faster speeds.

Even assuming Crawford was skiing at an excessive speed, this court has held that fast, aggressive skiing does not constitute reckless behavior. In *Towns v. Davidson, supra,* 147 Cal.App.4th 461, an employee of Mammoth Mountain Ski Area collided with another skier. The plaintiff skier claimed on appeal from summary judgment that the employee's fast and aggressive skiing constituted recklessness. We stated: "[Defendant] was skiing quickly and aggressively. . . . These facts do not establish conduct totally outside the range of ordinary activity involved in the sport of skiing. There is no evidence [Defendant] consciously and deliberately chose to ski in a manner that

6

knowingly introduced risks of injury foreign to those inherent in the sport of skiing. [¶] Moreover, were we to conclude [Defendant's] conduct was so reckless as to be totally outside the range of ordinary activity involved in the sport of skiing, we would call into question vigorous skiing and fundamentally alter the nature of the sport. For many, the thrill of the sport is to ski as fast and as aggressively as reasonably possible. Assigning liability to [Defendant] on these facts would eliminate that aspect of the sport." (*Id*. at p. 471.)

Thus, assuming Crawford was skiing too fast, such conduct alone is not reckless because it is not " 'totally outside the range of ordinary activity involved in the sport,' " fast skiing being conduct that is inherent to the sport, and deterring fast skiing would " 'fundamentally alter the nature of the sport.' " (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1261.)

Rees relies heavily on our holding in *Lackner, supra*, 135 Cal.App.4th 1188. *Lackner* is distinguishable. In that case, the plaintiff was not skiing, but was standing in a largely deserted area used by skiers and snowboarders to rest before descending to the bottom of the slope when the accident occurred. (*Id*. at pp. 1193, 1194.) The defendant, who was there to compete in a later snowboarding championship, was racing down the mountain with other members of his snowboard team, and looking back to determine their positions. (*Id*. at p. 1194.) The run the snowboarders were on was not a designated training run. (*Id*. at p. 1200.) The impact of the collision catapulted the two skiers 50 feet into the air before they slid down the mountainside. (*Id*. at p. 1195.) The ski area revoked the defendant's lift ticket pursuant to its policy to do so when a skier or snowboarder engages in reckless conduct or fast skiing, or collides with another skier, and the defendant was suspended from the snowboarding championship in which he had come to compete. (*Id*. at pp. 1194-1195.)

*Lackner* recognized that "[i]nadvertent collisions with coparticipants who carelessly cross paths are an inherent risk of many sports," including skiing. (*Lackner,*

7

*supra,* 135 Cal.App.4th at p. 1199.) However, *Lackner* held there was a triable issue of fact as to whether the collision was inadvertent and unavoidable, since the defendant in that case had been speeding without looking where he was going, despite the fact he was unfamiliar with the area. (*Id*. at p. 1201.) We stated that because he was an expert snowboarder, he had the skill to avoid people standing in the area, and concluded that he was not paying attention to his surroundings. (*Ibid*.) We concluded there was a triable issue as to whether the defendant had been reckless because of the cumulative evidence that he was speeding, he was on a flat rest area, he was not looking where he was going, and he was unfamiliar with the area. (*Ibid*.)

The same constellation of facts does not exist here. Crawford did not collide with a person at rest, but someone who was herself in motion, however slow. The collision did not occur in a rest area, but on the slope. Crawford was not racing anyone. Accepting Rees's contention that Crawford was skiing fast, there was no evidence that she was not paying attention to her surroundings. Rees argues that just as the defendant in *Lackner* was not paying attention because he looking behind him to see where his teammates were, Crawford was not paying attention because she was looking at her boyfriend. It is true that Crawford's boyfriend was ahead of her on the right, but she testified she could see both her boyfriend and the three people in the class at the same time. This is an indication Crawford *was* paying attention to where she was going. Looking down the run is very different from looking back.

We are unpersuaded by Rees's argument that Crawford's violation of the Placer County Skier Responsibility Code demonstrates that Crawford's conduct "was totally outside the range of the ordinary activity in the sport of skiing." The Skier Responsibility Code lists several "duties" of skiers, one of which is to ski in a safe and reasonable manner, under sufficient control to be able to stop or avoid other skiers or objects." (Placer County Code, § 9.28.050, subd. A.) The Supreme Court has held that the "duties" set forth in the Placer County Code do not govern tort liability between skiers.

(*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1069.) Moreover, the code also provides that a person assumes and accepts the "inherent risks" of skiing, which the code defines to include "collision with other skiers and a skier's failure to ski within the skier's own ability." (Placer County Code, §§ 9.28.020-9.28.030.)

The trial court properly found that mere evidence of fast skiing is insufficient to show reckless conduct, and that such evidence "could arguably rise only to negligent conduct, which is inherent in the sport of skiing."

## DISPOSITION

The judgment is affirmed. Defendant is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


    BLEASE    , Acting P. J.


We concur:


    MURRAY    , J.


    DUARTE    , J.