Filed 6/3/15  Shore v. Waring Court etc. Med. Group CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| PAULA SHORE, Plaintiff and Appellant, v. WARING COURT PEDIATRIC & ADULT MEDICAL GROUP, Defendant and Respondent. | D065306 (Super. Ct. No. 37-2011-00101028-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal and William S. Dato, Judges.  Affirmed.

Olins Riviere Coates & Bagula, Mark S. Bagula, Kianne E. Holnagel, Russell Riviere, Adam Chaikin; Matthew S. Pappas; Paula Shore, in propria persona, for Plaintiff and Appellant.

Andrews & Hensleigh and Barbara J. Hensleigh for Defendant and Respondent.

I.

INTRODUCTION

Dr. Paula Shore filed this action against her former employer, Waring Court Pediatric and Adult Medical Group (Waring), among others. Shore brought a breach of contract claim against Waring in which she claimed that Waring breached her employment agreement by failing to pay her a bonus due under the agreement.[1]

Waring brought a motion for summary judgment on the ground that Shore's breach of contract claim was based on an "absurd" interpretation of the agreement, and that under the plain meaning of the agreement, no bonus was due. The trial court granted Waring's motion for summary judgment, ruling that Shore's claim was premised on a misinterpretation of the agreement.

On appeal, Shore claims that the trial court erred in granting judgment as a matter of law for Waring on her breach of contract cause of action. We affirm the judgment.

---

[1]     Although Shore also sued two other defendants, and brought additional claims against Waring, Shore's appellate brief raises claims solely with respect to her breach of contract claim against Waring. While Shore, appearing in propria persona, raised additional arguments at oral argument in support of reversal, it is well established that " '[w]e do not consider arguments that are raised for the first time at oral argument.' " (*Palp, Inc. v. Williamsburg National Ins. Co*. (2011) 200 Cal.App.4th 282, 291, fn. 2.) Accordingly, we restrict our discussion to those claims raised in Shore's appellate brief.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A.    *The Agreement*

In September 2007, Shore entered into an employment agreement with Waring to provide medical care to patients of the practice (the Agreement).

Paragraph 3 of the Agreement is entitled "<u>COMPENSATION</u>," and provides in relevant part:

> "[Shore] will be compensated at a monthly base rate of $10,000 to be paid semi-monthly.  Once [Shore's] collections have covered [Shore's] expenses, 90% of [Shore's] net profits will be paid to [Shore].  The net profits are calculated per an income and expense statement methodology.  The total monies allocated to expenses include [Shore's] portion of expenses indicated in paragraph 6 under EXPENSES."

---

[2]    Attorney Matthew Pappas filed an opening brief on behalf of Shore that contains not a *single* citation to the record, in complete disregard of the California Rules of Court. All rule references are to the California Rules of Court. (See rule 8.204(a)(1)(C) [stating that each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)  In addition, Attorney Pappas lodged an appellant's appendix that does not include the exhibits offered in connection with the summary judgment motion at issue on appeal, thereby violating rule 8.124(b)(1)(B).

We choose to exercise our authority under rule 8.204(e)(2)(C), to disregard such noncompliance rather than to order corrections or strike the brief with leave to file a new brief (see rule 8.204(e)(2)(A),(B)), not because Attorney Pappas's transgressions are minor, but because, as discussed below, we conclude that Shore's appeal is without merit and we do not wish to further delay the proceedings.  (See *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113 [lamenting failure to provide adequate record citations, but choosing to disregard noncompliance so as not to further delay the appeal].)

3

Paragraph 6 of the Agreement provides as follows:

"EXPENSES. The parties hereto shall be responsible for the payment of expenses as set forth below:

"a. Expenses of [Shore]. The following expenses shall be the responsibility of [Shore]:

"(1) Continuing Medical Education expenses over **$1,000** per year incurred during any calendar year, if there are no net profits.

"(2) Prorated expenses for professional licenses, professional fees and memberships, and moving expenses if contract is terminated before 2 years, if there are no net profits to cover these expenses.

"(3) No other expenses, unless agreed to in writing.

b. Expenses of [Waring]. [Waring] shall pay all other reasonable business expenses associated with Employee's practice of medicine including, but not limited to, rent, nursing and staff salaries, PA salaries, Workmen's comp, telephones, utilities, supplies, professional license fee, membership fees in required professional associations, claims made **malpractice costs** [*sic*] and up to **$1,000** of Continuing Medical Education expenses incurred during any calendar year. As a full-time employee, [Shore] will be entitled to [Waring]'s standard benefits package for full-time employees as constituted under [Waring]'s benefits plan. Employee benefits are medical insurance after 3 months employment, optional dental insurance paid by employee, and simple SEPP retirement plan offered to all employees after 1 year of employment."

B.     *Shore's breach of contract claim*

In July 2013, Shore filed the operative first amended complaint. In her complaint, Shore quoted paragraph 3 of the Agreement governing "COMPENSATION," and then alleged, "[Paragraph] 6(a) of the . . . Agreement sets forth an exhaustive list of expenses (i.e. the only expenses) for which [Shore] was supposed to be responsible."

4

In a breach of contract cause of action Shore alleged in relevant part:

"[Waring] breached the . . . Agreement by (a) making [Shore] responsible for expenses[3] which included worker's compensation, malpractice insurance, salaries paid to staff (not including [Shore's] salary), telephone costs, rent, and various other expenses that were not [Shore's] responsibility under [Paragraph] 6 of the . . . Agreement and (b) failing and refusing to perform under the . . . Agreement by, among other things, paying [Shore] all wages, including profits from Waring, to which [Shore] was entitled."

C.     *Waring's motion for summary judgment*

Waring filed a motion for summary judgment in which it claimed that it was entitled to judgment as a matter of law on Shore's breach of contract claim. Waring pointed out that the final sentence of the compensation provision of the Agreement (paragraph 3) provides, "The total monies allocated to expenses *include* [Shore's] portion of expenses indicated in Paragraph 6 under EXPENSES." (Italics added.) Waring noted that Shore's breach of contract claim was based on her contention that this provision should be interpreted as providing that "*only* those few minor expenses listed in Paragraph 6(a) of the [A]greement could be deducted from gross revenue for the purpose of determining 'net profits.' " (Italics added.) Waring argued that the Agreement should be interpreted as providing that, in calculating Shore's "expenses" under paragraph 3 for purposes of determining her eligibility for a bonus, the expenses for which Shore was

---

3       Although Shore alleged that Waring had breached the Agreement by "making [Shore] responsible for [certain] expenses," it is clear that Shore did not intend to allege by such language that Waring had required Shore to incur such expenses. Rather, it is clear from the record that Shore intended to allege that Waring had breached the contract by failing to pay her a bonus due to Waring's purportedly improper inclusion of certain expenses in its determination of her ineligibility for such bonus.

5

responsible under paragraph 6(a) were to be *included*, but that paragraph 6(a) was not an exhaustive list of all expenses to be considered.

Waring further maintained that Shore's contention "that most expenses attributable to her practice must be ignored" in calculating her eligibility for a bonus was "absurd," noting that Shore's own base salary was not among the expenses listed in paragraph 6(a). Waring argued that "[Shore] seems to comprehend the absurdity of her argument, because in her complaint and in the latest round of damages numbers supplied by [Shore], she appears to deduct her base pay."

D.      *Shore's opposition*

Shore filed an opposition to Waring's motion for summary judgment in which she argued that paragraph 3 of the Agreement unambiguously provided that *only* those expenses listed in paragraph 6(a) of the Agreement could be considered in determining Shore's expenses for purposes of determining her eligibility for a bonus.[4] Shore maintained that, in determining that she was ineligible for a bonus, Waring had

---

[4]    Specifically, Shore argued, "The only expenses allocated to Shore under the contract are Continuing Medical Education expenses over $1,000 per year incurred during any calendar year, if there are no net profits; and prorated expenses for professional licenses, professional fees and memberships, and moving expenses if the contract was terminated before [two] years, if there were no net profits to cover these expenses."

6

improperly attributed to her expenses for various overhead costs such as marketing, rent, and office equipment.[5]

E.    *The trial court's ruling*

After further briefing and a hearing, the trial court entered an order granting Waring's motion for summary judgment. The court reasoned in part:

> "Shore misconstrues the Agreement, which she concedes is unambiguous. . . .  Net profit is generally understood to mean revenue minus expenses. . . .  The dispute here relates to what expenses are to be deducted.  The fact that Paragraph 6 outlines what expenses each party shall be responsible for *paying* does not mean [Waring's] expenses may be ignored when calculating net profit. Compensation and expenses are addressed by separate provisions of the Agreement.  There is nothing inconsistent about specifying that [Waring] is responsible for *paying* certain expenses but then considering those same expenses when calculating net profits.  The fact that Paragraph 3 provides that '[Shore]'s portion of expenses indicated in Paragraph 6' are to be included when determining net profits merely removes any doubt that Shore's expenses under Paragraph 6(a) are to be considered along with [Waring's] expenses. Because the word 'includes' is a term of enlargement, this sentence does not mean that *only* Shore's share of expenses may be considered.  Even Shore impliedly acknowledges that Paragraph 6(a) is not an exhaustive list of expenses that may be deducted, because she deducts her own salary even though that is not an expense listed in Paragraph 6(a). . . .  Her expert concedes that [Waring's] methodology would be correct if net profits are not limited by Paragraph 6."

The trial court subsequently entered judgment in favor of Waring.  Shore appeals from the judgment.

---

5    Shore acknowledged that her damages expert had "treated [Shore's] salary as an expense, which was deducted from revenue in order to determine net profits."  Shore asserted, "This is the manner contemplated under [Paragraph] 3 of the [Agreement]."

7

III.

DISCUSSION

*The trial court properly granted judgment as a matter of law for Waring*
*on Shore's breach of contract cause of action*

Shore contends that the trial court erred in granting judgment as a matter of law for Waring on Shore's breach of contract cause of action. Specifically, Shore contends that the trial court "improperly interpreted the clear and unambiguous contract terms at issue."[6]

A.    *Governing law*

1.    *The law governing summary judgment*

A moving party is entitled to summary judgment when he establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant may make this showing by establishing that the plaintiff cannot establish one or more elements of its cause of action, or that the defendant has a complete defense to the cause of action. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

On appeal, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. [Citations.]' " (*Trop v. Sony Pictures*

---

[6]    Shore's brief on appeal contends only that the trial court erred in interpreting the contract. While Shore brought a claim for accounting in the trial court, she raises no contention with respect to the trial court's grant of summary adjudication on this cause of action in her appellate brief.

8

*Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143, quoting *Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222-223.)

2.  *The law governing breach of contract*

In order to prove a breach of contract, a plaintiff is required to establish that the defendant breached the contract, among other elements. (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1391, fn. 6.)

In determining whether a triable issue of material fact exists with respect to breach, it is often necessary to interpret the applicable contract. "[T]he ordinary rules of contract interpretation" are well established. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).) The *Santisas* court described these rules as follows:

> " 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]' [Citation.]" (*Santisas, supra,* at p. 608.)

B.  *Application*

Shore contends that "[t]he trial court erroneously interpreted the word 'include' used in the last sentence of [Paragraph] 3." Although Shore's brief is not a model of clarity, she appears to maintain, as she did in the trial court, that paragraph 3 of the Agreement unambiguously provides that only those expenses listed in paragraph 6(a) of

9

the Agreement may be considered in determining Shore's expenses for purposes of determining her eligibility for a bonus (and the amount of the bonus), and that therefore, a triable issue of fact existed with respect to her breach of contract claim.

Paragraph 3 provides in relevant part, "The total monies allocated to expenses *include* [Shore's] portion of expenses indicated in paragraph 6 under EXPENSES." (Italics added.)

"The term 'includes' is 'ordinarily a word of enlargement and not of limitation.' " (*Paramount Gen. Hosp. Co. v. National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501.) Thus, the text of paragraph 3 suggests that Shore's expenses under paragraph 3 shall *include* expenses in paragraph 6(a). However, there is nothing in paragraph 3, or in the remainder of the Agreement, that suggests that Shore's expenses under paragraph 3 shall be *limited to* the expenses listed in paragraph 6(a).

Further, interpreting the Agreement as providing that only those few minor expenses listed in paragraph 6(a) may be included in determining Shore's bonus based on "net profits" (paragraph 3), is so far contrary to the ordinary understanding of the meaning of the term "net profits" as to render such an interpretation absurd. The term "net profits" is ordinarily understood as "[p]rofits after deduction of *all* expenses . . . ." (Black's Law Dict. (5th ed. 1979) p. 939, italics added.) In contrast, Shore's interpretation of the Agreement would provide that *only* her continuing medical education and licensing and moving expenses (i.e., expenses listed in paragraph 6(a)) could be considered in determining her eligibility for a bonus based on "net profits," and

10

the amount of such bonus.  Indeed, as the trial court properly noted, even Shore impliedly acknowledged the absurdity of interpreting paragraph 6(a) as containing an exhaustive list of expenses that may be considered in determining net profits under paragraph 3, since Shore's expert included Shore's base salary as an expense to be considered in determining Shore's damages despite the fact that Shore's salary is *not* an expense listed in paragraph 6(a).

We conclude that the trial court properly determined that Waring established that Shore's breach of contract claim is premised upon a misinterpretation of the Agreement, and that the trial court properly granted judgment as a matter of a law for Waring on Shore's breach of contract cause of action.[7]

---

[7] Shore also contends that the trial court improperly applied the "practical construction" doctrine (see, e.g., *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 798 [" '[W]hen a contract is ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight' "]), and improperly considered extrinsic evidence in granting judgment as a matter of law for Waring on her breach of contract claim.  There is nothing in the trial court's order suggesting that the court applied the practical construction doctrine or considered extrinsic evidence in granting judgment as a matter of law for Waring on Shore's breach of contract.  Accordingly, Shore is not entitled to reversal of the judgment on either of these grounds.

IV.

DISPOSITION

The judgment is affirmed.  Waring is entitled to costs on appeal.[8]

_____
                                                          AARON, J.

WE CONCUR:


_____
           HALLER, Acting P. J.


_____
                IRION, J.

---

[8]     In its respondent's brief, Waring requested an award of attorney fees on appeal. We decline to consider its request.  Rule 3.1702(c) sets forth the procedure for claiming attorney fees on appeal. (See also rule 8.278(d)(2) ["an award of costs neither includes attorney's fees on appeal nor precludes a party from seeking them under rule 3.1702"].)